# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **VICKEY ROBINSON HALL,**<br>     Plaintiff,<br><br>v.<br><br>**TALLADEGA HOUSING AUTHORITY,**<br>     Defendant. | Case No. 1:25-cv-647-CLM |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant Talladega Housing Authority's ("THA") motion to stay and enforce an arbitration agreement under 9 U.S.C. §§ 3-4 (*see* doc. 6). Plaintiff Vickey Robinson Hall first opposed the motion by arguing that the entire arbitration agreement is invalid and unenforceable. (*See* doc. 9). THA then argued for the first time in its reply brief that a delegation provision in the arbitration agreement gives an arbitrator the exclusive authority to decide issues of arbitrability, including whether the whole agreement is valid and enforceable (*see* doc. 10). The court ordered Hall to respond to THA's new argument (*see* doc. 11). Hall responded (doc. 12), so the issues are fully briefed.

For the reasons below, the court **GRANTS** THA's motion.

## BACKGROUND

### A.    Factual Allegations

Hall is a black woman. She works at THA as a property manager. In September 2022, Hall realized that she and other black female employees were being paid less than their white male colleagues, so she filed a complaint with THA. Once Hall complained, her manager began to scrutinize her work and require her to "perform tasks which had not been previously required." (Doc. 1, p. 4).

A few weeks passed, but THA had still not "advised Hall of the findings and conclusion of any investigation into her complaint," even though THA's employee handbook required it do so "promptly." (*Id.* at p. 5). So Hall took matters into her own hands and filed a charge of discrimination with the EEOC.

In September 2023, Hall's manager offered her "a different property to manage as well as $2.15 an hour raise." (*Id.*). Hall asked her manager if she could receive a larger pay increase, but her manager said that "she did not negotiate pay for anyone." (*Id.*). A few months later, Hall's manager assigned Hall to manage a property that was "undesirable and hostile." (*Id.*).

Nearly a year later, in July 2024, Hall requested that the EEOC issue her a letter granting the right to sue THA. (Doc. 9, p. 2). But before the EEOC issued the letter, THA required Hall to sign an arbitration agreement. THA says there is no evidence that it would've fired Hall if she refused to sign the agreement (doc. 10, p. 5), but the agreement plainly states that the consideration Hall received for signing was THA's "offer of employment or continued employment." (doc. 6-1, p. 1). Faced with the dilemma of signing an agreement that gave up her right to sue in federal court or losing her job, Hall signed and continued working for THA.

In February 2025, the Department of Justice issued Hall her right to sue letter. (*See* doc. 1-2; doc. 9, p. 3). Two months later, Hall filed her complaint in this court, bringing claims for: (1) gender discrimination under Title VII; (2) race discrimination under Title VII; (3) retaliation under Title VII; (4) pay discrimination under the Equal Pay Act; and (5) retaliation under the Equal Pay Act.

**B.    THA Moves to Compel Arbitration**

THA answered and simultaneously filed its motion to stay and compel arbitration (docs. 6, 7). According to THA, Hall's "claims fall within the scope of the arbitration agreement," so they should be submitted to arbitration. (Doc. 6, p. 2). Hall responded by attacking the entire

agreement's validity and enforceability. Hall argued that THA knew she had requested a right to sue letter from the EEOC, so THA "conditioned Hall's continued employment on her signing an agreement to arbitrate any claims she had against [THA]." (Doc. 9, p. 4). Hall contended that THA sought the agreement for an "improper purpose," and public policy renders the agreement unenforceable. (*Id.* at p. 5).

Then, in its reply brief, THA argued for the first time that this court cannot decide the issue of arbitrability because, THA says, this provision of the arbitration agreement gives the arbitrator (here, the American Arbitration Association or "AAA") the exclusive ability to decide whether the agreement is valid and enforceable:

> Employee have been given the opportunity to review the AAA's National Rules for the Resolution of Employment Disputes that **would govern** the dispute resolution process under this agreement.

(Doc. 10, quoting doc. 6-1, p. 3) (emphasis added). THA asserted that this provision delegates the issue of whether the agreement is enforceable to the AAA because it incorporates the AAA's Rules into the arbitration agreement. And since the AAA's Rules give the AAA "the power to rule on their jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement," THA says that only the AAA—not the courts—can decide the threshold issue of whether THA and Hall's agreement is valid and enforceable. (*Id.*, citing the AAA's Employment/Workplace Arbitration Rules R-7(a)). THA failed, however, to mention that it expressly saved its own ability to file claims that it may have against Hall in court and have a judge (not the AAA) decide the issue of arbitrability:

> Notwithstanding any other provision in this Agreement or the AAA's rules, a Court, not an arbitrator, shall decide whether any claim asserted by [THA] against Employee (and those acting in concert or conspiring with Employee) is an excepted claim that falls outside the scope of this Agreement.

(*Id.* at p. 2). Because THA did not raise its argument about the delegation provision until its reply brief, the court ordered Hall to file a sur-reply to give Hall a "fair opportunity to raise a direct, distinct challenge to the delegation provision." (Doc. 11, p. 3). She did. (doc. 12).

## STANDARD OF REVIEW

When deciding a motion to compel arbitration, the court uses a "summary judgment-like standard" to determine whether there is a "genuine dispute of material fact concerning the formation of … an [arbitration] agreement." *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1346 (11th Cir. 2017) (quotation marks omitted). Accordingly, the court may consider evidence outside the pleadings. *See id.*; *see also Bazemore v. Jefferson Cap. Sys., LLC*, 837 F.3d 1325, 1333 (11th Cir. 2016).

## DISCUSSION

### I. Governing Law

The Federal Arbitration Act, 9 U.S.C. §§ 2-4, governs the parties' dispute over the validity and enforceability of the arbitration agreement. Section 2 is the "primary substantive provision" of the FAA and provides:

> A written provision in … a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2; *see also Moses H. Cone Mem'l Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). So, as with all other contracts, courts must enforce arbitration agreements "according to their terms," unless they are "invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Rent-A-Ctr., W, Inc. v. Jackson*, 561 U.S. 63, 67-68 (2010) (quoting *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

Sections 3 and 4 implement § 2's substantive rule. "Under § 3, a party may apply to a federal court for a stay of the trial of an action 'upon any issue referable to arbitration under an agreement in writing for such arbitration.'" *Rent-A-Ctr.*, 561 U.S. at 68 (quoting 9 U.S.C. § 3). And under § 4, a party seeking to enforce an arbitration against an unwilling party "may petition" a federal court for an order directing the parties to arbitration. *See* 9 U.S.C. § 4. Section 4 requires federal courts to order arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." *Id.*

In *Rent-A-Ctr.*, the Supreme Court applied the above FAA provisions to an arbitration agreement that contained a delegation provision. *See* 561 U.S. 63, 71-72 (2010). In doing so, the Court held that a party seeking to avoid arbitration (like Hall) must timely lodge a distinct challenge to an arbitration agreement's delegation provision, rather than the arbitration agreement as a whole, before a court can consider whether the entire agreement is unenforceable. *See id.* That's because a delegation provision is a "written provision" to "settle by arbitration a controversy" under § 2, and thus severable from the remainder of an arbitration agreement. *Id.*; *see also Parm v. Nat'l Bank of Cal., N.A.*, 835 F.3d 1331, 1334 (11th Cir. 2016) ("Delegation clauses are severable from the underlying agreement to arbitrate."). So unless the party seeking to avoid arbitration "challeng[es] the delegation provision specifically, [courts] must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the agreement as a whole to the arbitrator." *Id.* at 72.

A delegation provision binds the parties only when it "clearly and unmistakably" evidences the parties' intent "to delegate questions of arbitrability to the arbitrator." *See JPay, Inc. v. Kobel*, 904 F.3d 923, 936-40 (11th Cir. 2018). In the Eleventh Circuit, provisions that incorporate specific AAA Rules (like the one in THA and Hall's agreement) are "clear and unmistakable" evidence of the parties' intent to delegate questions of arbitrability to the arbitrator. *See id.* at p. 936; *see also* (doc. 6-1, p. 3). But just because the parties have clearly and unmistakably agreed to a

5

delegation provision doesn't mean the delegation provision is "unassailable." *Rent-A-Ctr.*, 561 U.S. at 71. "If the validity of a delegation provision is challenged in response to a motion to compel arbitration, then the court, rather than arbitrator, must address those challenges." *Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 355 (6th Cir. 2022) (citing *Rent-A-Ctr.*, 561 U.S. at 71). And "if a party successfully challenges the validity or enforceability of a delegation [provision], the court should proceed to resolve any challenges to the validity or enforceability of the parties' primary arbitration agreement[.]" *Attix v. Carrington Mortg. Services, Inc.*, 35 F.4th 1284, 1303-04 (11th Cir. 2022) (citing *Parm*, 835 F.3d at 1335).

## II.  Application to Hall and THA's Arbitration Agreement

With the above principles in mind, the court starts with the threshold question: Has Hall specifically challenged the arbitration agreement's delegation provision as *Rent-A-Ctr.* requires? If the answer is yes, then the court can proceed to the next question: Is the delegation provision enforceable?

### A.  Has Hall Attacked the Agreement's Delegation Provision?

"Challenging a delegation agreement is a matter of substance, not form." *Attix*, 35 F.4th at 1304. It's not enough for a party seeking to avoid arbitration to say, "I am challenging the delegation provision," nor is it enough for a party to challenge the arbitration agreement as a whole. *Id.* Instead, "[a] party specifically challenges the validity and enforceability of a delegation agreement if, and only if, the substantive nature of the party's challenge meaningfully goes to the parties' *precise agreement* to delegate threshold arbitrability issues." *Id.* (citing *Rent-A-Ctr.*, 561 U.S. at 71-72).

In her sur-reply, Hall contends the delegation provision is unenforceable under Alabama contract law because: (a) Hall, as the party in an inferior bargaining position, lacked a meaningful choice of whether to agree to the delegation provision; (b) the delegation clause, alongside

the agreement's cost splitting provision, imposes an increased financial burden on Hall to dissuade her from pursuing claims against THA; and (c) THA, as the party in a superior bargaining position, reserved to itself the opportunity to have a court decide whether a claim made by THA against Hall falls outside the scope of the agreement. (*See* doc. 11, pp. 10-12).

Hall's first two arguments do not specifically challenge the delegation provision; they attack the arbitration agreement as a whole. Indeed, while Hall may have lacked a meaningful choice of whether to agree to the delegation provision, the same can be said for every other provision in the arbitration agreement. And while Hall may incur higher costs because of the arbitration agreement's cost splitting provision, those increased costs do not touch on the delegation provision specifically. *See Attix*, 35 F.4th at 1304.

But Hall's last argument—*i.e.*, that THA reserved for itself the opportunity to have a court decide the arbitrability of its claims—*does* attack the delegation provision specifically. According to the arbitration agreement, Hall is required to bring "all claims or controversies" she may have against THA in arbitration except (a) claims for workers' compensation benefits; (b) claims for unemployment benefits; and (c) claims relating to sexual harassment or sexual assault "based on conduct the occurs subsequent to the effective date" of the arbitration agreement. (*See* doc. 6-1, p. 2). Similarly, THA is required to bring "all claims or controversies" it may have against Hall in arbitration except for (a) claims arising from violations of Hall's "Employee Confidentiality Agreement or Hall's "unlawful use of [THA's] trade secrets, or confidential and/or proprietary information"; (b) claims arising out of, connecting with, or for eviction; and (c) any claims for which "THA seeks a temporary restraining order and/or preliminary injunction." (*Id.*). But—and here's the kicker—under the below provision of the arbitration agreement, THA can ask a court to decide whether one of its claims against Hall is an excepted claim:

> Notwithstanding any other provision in this Agreement or the AAA's rules, a Court, not an arbitrator, shall decide whether any claim asserted by [THA] against Employee (and those acting in concert or conspiring with Employee) is an excepted claim that falls outside the scope of this Agreement.

(Doc. 10, p. 2). So a court—not the AAA—determines the arbitrability of "any claim" THA asserts against Hall. Yet, under the delegation provision, the courthouse doors are always closed to Hall. Hall argues that, because THA had superior bargaining power and gave itself this benefit, the delegation provision is unconscionable. This is a specific challenge to the delegation provision because its "substantive nature" "goes to the parties' precise agreement to delegate threshold arbitrability issues." *See Attix*, 35 F.4th at 1304 (citing *Rent-A-Ctr.*, 561 U.S. at 71-72).

The court thus finds that Hall has mounted a specific challenge to the enforceability of the agreement's delegation provision under § 2. And because she has, the court must now consider whether the delegation provision is unenforceable under § 2.

### B.  Is the Delegation Provision Enforceable?

Because Hall's challenge to the delegation provision under § 2 of the FAA is that the provision is unconscionable, the court must apply Alabama state contract law in assessing her challenge. *See Cherry, Bekaert & Holland v. Brown*, 582 So.2d 502, 506 (Ala. 1991) (stating that, in Alabama, contracts are "governed by the laws of the state where it is made"). Under Alabama law, an arbitration agreement may be held unconscionable when (1) its terms are "grossly favorable" to one party that has (2) overwhelming bargaining power. *Am. Gen. Finance, Inc. v. Bush*, 793 So.2d 738, 748 (Ala. 2000). The Alabama Supreme Court has held that an agreement may be "grossly favorable" to a party when it reserves that parties' "option to litigate" while restricting the other party to arbitration *and* limits the remedies the other party can receive in arbitration. *See id.* at 749 (citing *Roberson v. Money Tree of Ala., Inc.*, 954 F. Supp. 1519, 1526 (M.D. Ala. 1997)).

In short, to prove the delegation provision is unconscionable, Hall needs to show a loss of forum *and* a loss of remedy. Hall cannot show both. While the delegation provision restricts Hall's access to the courts in a way that it doesn't for THA, the delegation provision does not limit Hall's remedies. Indeed, the arbitration agreement incorporates the AAA's Rules, and Rule 46 states that the AAA "may grant any remedy, relief, or outcome that the parties could have received in court, including awards of attorney's fees and costs, in accordance with applicable law." (*See* doc. 12-1, p. 25). So regardless of whether the decisionmaker is the AAA or a federal district court, the remedies Hall can receive are the same. And because her remedies aren't limited in arbitration, the delegation provision is not "grossly favorable" to THA under Alabama law.

As a result, Hall's challenge to the delegation provision fails. That means an arbitrator must resolve Hall's overall challenges to the validity or enforcement of the arbitration agreement. And that, in turn, means that this court must grant THA's motion to stay and compel arbitration, as required by §§ 3-4 of the FAA. *See Attix*, 35 F.4th at 1294 ("If the parties' arbitration agreement applies to their dispute and no grounds render it invalid or unenforceable, the court 'shall' compel arbitration and stay proceedings in federal court. 9 U.S.C. §§ 3-4.").

—

As discussed, *Rent-A-Ctr.* and its progeny prevent the court from deciding Hall's main argument that the arbitration agreement is invalid and unenforceable because THA made Hall choose to either keep her job or her federal lawsuit. But the court notes that if Hall had *refused* to sign the arbitration agreement while her EEOC charge remained pending, and THA fired her, THA's decision would have likely constituted an additional claim of retaliation under Title VII. *See Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1278-79 (11th Cir. 2008). It would seem odd for the conscionability of the Hobson's choice that THA presented Hall to turn on which choice Hall made. But for the reasons discussed, that's a question left solely to the arbitrator.

## CONCLUSION

For the reasons above, the court **GRANTS** THA's motion to stay and compel arbitration (doc. 6). The court **ORDERS** the parties to submit a joint status report within seven days following the commencement of arbitration, and no later than **May 8, 2026**.

**DONE** and **ORDERED** on March 9, 2026.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE